# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

RITA LOVEJOY,

        Plaintiff,

v.                              CIVIL ACTION NO.  2:20-cv-00537

JACKSON RESOURCES COMPANY,

        Defendant.

### MEMORANDUM OPINION & ORDER

Before the court is Defendant Jackson Resources Company's ("Jackson") Motion to Dismiss [ECF No. 14]. The parties have fully briefed the issues raised in the Motion to Dismiss and the Motion is ripe for decision. [ECF No's. 22, 26]. I will also address Jackson's unopposed Motion to Strike Exhibit A [ECF No. 23]. Since the filing of this Motion to Dismiss, Plaintiff Rita Lovejoy ("Lovejoy") has moved for leave to amend her complaint. [ECF No. 29]. I granted that motion. [ECF No. 38]. Jackson has now answered the amended complaint and incorporated within that answer their motion to dismiss the original complaint. For the reasons contained in this memorandum opinion, the Motion [ECF No. 14] is **DENIED IN PART** and **GRANTED IN PART**.

## I.    BACKGROUND

Lovejoy is the owner of property located at Upper Mud River and Palermo Road in Lincoln County, West Virginia. [ECF No. 22 at 2]. Lovejoy complains that Jackson

is the past owner of a natural gas well and pipeline facility (the "Jackson facility") that sits on her property. [ECF No. 1, ¶1]. In 2018, Lovejoy became concerned that certain hazardous or solid wastes from the Jackson facility had migrated or were threatening to migrate onto the property. [ECF No. 22 at 2]. Lovejoy commissioned an environmental investigation of the soil surrounding the Jackson facility. That investigation took place on October 16, 2018 and revealed the presence of a host of "contaminants of concern" at elevated levels in the groundwater and in the soil. Namely, Lovejoy alleges that the organic compound Bis(2-ethylhexyl)phthalate, a known carcinogen, was discovered in the groundwater and in the soil adjacent to the Jackson facility. This compound does not naturally occur in groundwater or soil and is considered a "priority pollutant" under the Clean Water Act and the Resource Conservation and Recovery Act.

Environmental sampling also revealed the presence of several other compounds in the area adjacent to the Jackson facility: Benzo(a)anthracene, Benzo(b)fluoranthene, Benzo(k)fluoranthene, Chrysene, Fluoranthene, Phenanthrene, and Pyrene. *Id.* Lovejoy alleges that each of the contaminants that have been discovered near the Jackson facility are "solid wastes" within the meaning of 40 C.F.R. § 261.2. Lovejoy alleges that no other industrial operations have been "historically conducted at the Lovejoy Property." [ECF No. 39, at ¶ 22]. Accordingly, Lovejoy claims that the Jackson facility is the only operation or apparatus that could have contributed to the presence of the contaminants.

Lovejoy brings seven claims arising out of this nexus of fact: recovery of response costs associated with a contaminated site and declaratory judgment that

Jackson is liable for response costs under Section 107, 42 U.S.C. §§ 9607(a) and 9613(g) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") (**count I**); citizen suit relief from permitting violations under the Resource Conservation and Recovery Act ("RCRA") and the West Virginia Hazardous Waste Management Act ("WVHWMA") (**count II**); citizen suit relief for judicial abatement of an imminent and substantial endangerment under the RCRA (**count III**); judicial abatement of a public nuisance under West Virginia law (**count IV**); relief for a private nuisance (**count V**); negligence (**count VI**); and strict liability (**count VII**).

Jackson moves to dismiss these claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, Jackson argues that Lovejoy's CERCLA claim has failed to "identify with sufficiently meaningful detail the conduct of Jackson that forms the basis for her action." [ECF No. 14 at 1]. Jackson states that Lovejoy has made conclusory allegations which do little more than make formulaic recitations of the elements of a cause of action. *Id.* Jackson further argues that Lovejoy fails to state a claim for relief under the RCRA and the WVHWMA because: (**i**) Jackson is not a present owner or operator of the facility on the Lovejoy property; (**ii**) the RCRA and WVHWMA exclude the regulation of natural gas from the definition of hazardous waste for purposes of permitting violations; (**iii**) under Fed. R. Civ. P. 12(b)(1), this court does not have jurisdiction over the RCRA claims contained in counts II and III because Lovejoy did not provide sufficient notice to Jackson of alleged violations as required under 42 U.S.C. § 6972 and 40 C.F.R. § 254.3; and (**iv**) Lovejoy has failed to state a claim upon which relief can be granted because she has not pled sufficient

facts to support her allegations of an imminent and substantial harm to health or the environment under 42 U.S.C. § 6972(a)(1)(B).

As to Lovejoy's West Virginia common law claims, Jackson argues that Lovejoy has failed to identify the special injury that is needed to establish a public nuisance claim; that Lovejoy has not alleged a substantial interference with the use and enjoyment of her land, such that her private nuisance claim is viable; and that her strict liability claim fails because Lovejoy has not alleged that Jackson was engaged in any abnormally dangerous activity. [ECF No. 14 at 2].

## II.    STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, 'the-defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). In considering a Rule 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that federal subject matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). There are two ways in which a defendant may present a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. In such a case, all facts as alleged by the plaintiff are assumed to be true. Alternatively, a Rule 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, the trial court's "very power to hear the case" is at issue. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). The district court is then free to weigh the evidence to determine the existence of jurisdiction. *Adams*, 697 F.2d at 1219. "No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. Where a complaint invoking federal question jurisdiction "is not colorable," it should be dismissed under Rule 12(b)(1). *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006).

Related to my ruling on this Motion is whether I may properly consider Lovejoy's Exhibit A, attached to her response to the Motion to Dismiss. [ECF No. 22]. Exhibit A is an EPA pamphlet containing information about the Bentsen Amendment

to RCRA. As a general principle, the District Court may not rely on materials found outside of the complaint unless such material is clearly integral to the Complaint. *See Blankenship v. Manchin*, 471 F.3d. 523, 526 n.1 (4th Cir. 2016). The EPA pamphlet that Lovejoy attached to her responsive brief was not submitted as part of the Amended Complaint, nor is it integral to the Amended Complaint. I will not consider it for purposes of ruling on this Motion. Jackson's Motion to Strike Exhibit A [ECF No. 23] is **GRANTED**.

## III.   DISCUSSION

### A. CERCLA (COUNT I)

The primary basis of Jackson's motion to dismiss the CERCLA claim in Count I is that Lovejoy's pleading fails to rise above the level of conclusory allegations. Jackson argues that Lovejoy "makes no effort to describe when or how hazardous substances came to be located on the Lovejoy property and provides no factual allegation linking the disposal of such substances to the time period in which Jackson owned or operated the Jackson facility." [ECF No. 15 at 12]. Jackson states that Lovejoy is unable to point to any conduct on the part of Jackson that caused the contaminants to be released, and she has failed to state facts that support the idea that the contaminants are related to the production and transportation of natural gas. [ECF No. 26 at 3].

Section 107 of CERCLA provides for strict liability for responsible parties. *See United States v. Monsanto*, 858 F.2d 160, 167 (1988). "Congress enacted CERCLA to address the increasing environmental and health problems associated with inactive hazardous waste sites." *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837,

841 (4th Cir. 1992). The statute encourages private cleanup of such hazards by providing a cause of action for the recovery of costs incurred in responding to a "release" of hazardous substances at any "facility." 42 U.S.C. § 9607. Under CERCLA, a person who incurs such cleanup costs is entitled to recover from anyone who qualifies as a "responsible person" under the statute. *Id.* Responsible persons include the current "owner" or "operator" of the facility or any person who "owned" or "operated" the facility at the time of "disposal," *id.* at § 9607(a)(2); any person who "arranged for disposal or treatment" of hazardous substances at the facility, *id.* at § 9607(a)(3); and any person who accepts hazardous substances "for transport to disposal or treatment facilities, incineration vessels or sites," *id.* at § 9607(a)(4). To recover response costs, the plaintiff need not "prove its case with mathematical precision . . . or scientific certainty." *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 355 F.3d 574, 590 (6th Cir. 2004). Moreover, a claim for response costs may "be established entirely through circumstantial evidence." *Tosco Corp. v. Koch Industries*, 216 F.3d 886, 892 (10th Cir. 2000) (noting that requiring direct evidence relating to disposal that occurred in the past is inappropriate). CERCLA does not "cast the plaintiff in the impossible role of tracing particular waste to particular sources . . . a task that is often technologically infeasible due to the fluctuating quantity and varied nature of the pollution at a site over the course of many years." *Acushnet v. Mohasco Corp.*, 191 F.3d 69, 76 (1st Cir. 1999). Nevertheless, the plaintiff must present sufficient evidence from which a reasonable and rational approximation of each defendant's individual contribution to the contamination can be made." *In re Bell Petroleum Servs.*, 3 F.3d 889, 903 (5th Cir 1993).

Lovejoy's complaint certainly relies on inference that the substances identified in the soil and groundwater are attributable to the Jackson facility:

> Since no operation historically conducted at the Lovejoy Property could have contributed the presence of these contaminants to the environment, the sole plausible source of these contaminants on the Lovejoy Property, within environmental media underlying that property, and in the vicinity thereof is the migration of such contaminants found at, under and in the vicinity of the Jackson Facility reasonably exists.

[ECF No. 39, at ¶22]. While Jackson argues that Lovejoy has been unable to point to any affirmative act that led to the contamination, it is "well established in the Fourth Circuit that the term 'disposal' includes passive migration [from the source]." *SPS Ltd. P'ship, LLLP v. Sevestral Sparrows Poing, LLC*, 808 F. Supp. 2d 794, 805 (D. Md., July 5, 2011) (discussing *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 845 (4th Cir. 1992)). In *Nurad*, the court held that a former owner of a manufacturing facility could be held liable under CERCLA for passive migration of hazardous substances, even where the former owner took no active role in managing the processes that lead to the leaking of hazardous substances. 966 F.2d at 844–47.

I find that at the Rule 12 stage of this case, the inference that Lovejoy raises in Paragraph 22 plausibly states a claim for liability under Section 107—even if does so only by the narrowest of margins. Lovejoy complains that the substances identified by the October 16, 2018 sampling are "solid wastes" within the meaning of 40 C.F.R. § 261.2 and "hazardous wastes" within the meaning of 40 C.F.R. Part 261 and Title 33, Series 20, of the West Virginia Code of State Rules, that the pipeline is a "facility" under CERCLA, and that the compounds detected are at unusually elevated levels in

the soil and groundwater. What Lovejoy has not done, however, is allege that any of the compounds that were detected in her soil and groundwater somehow originate, derive, or occur as a component or byproduct of natural gas. This strikes me as an important omission. I am aware that the nature of environmental litigation can be challenging for a plaintiff who often does not know the full picture of the damage she suspects has occurred. But at the summary judgment stage, Lovejoy will have to make a much stronger case that the compounds that turned up in her soil study are linked to the processes of the Jackson facility. For now, I find that her allegations plausibly state a claim to relief, and she may proceed to discovery. As it relates to Count I, the motion to dismiss is **DENIED**.

## B. RCRA Claims (Counts II and III)

### 1. Jackson's Rule 12(b)(1) motion

Jackson first moves to dismiss Lovejoy's RCRA claims for lack of subject matter jurisdiction pursuant to 42 U.S.C. § 6972(b). When considering a jurisdictional argument under Federal Rule 12(b)(1), I need not attach a presumption of truth to the allegations contained in the complaint. *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. July 5, 2011). Moreover, when reviewing a factual attack on the court's subject matter jurisdiction, I am free to consider matters outside the pleadings without converting the defendant's motion to a motion for summary judgment. *Id.*

RCRA provides that before filing a lawsuit under § 6972(a)(1), a plaintiff must provide the defendant with a notice of intent to sue at least 60 days before filing a suit for permitting violations under § (a)(1)(A) or 90 days before filing suit pursuant

to § (a)(1)(B). 42 U.S.C. § 6972(b)(2)(A). Failure to do so is grounds for dismissal of a RCRA claim. *See City of Evanston v. N. Ill. Gas Co.*, 229 F. Supp. 3d 714, 722 (N.D. Ill., Jan. 17, 2017). "A notice of intent to sue must be 'sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit.'" *Id.*

Here, Jackson argues that Lovejoy's notice of intent to sue was deficient because "Lovejoy merely asserted that there are contaminants on her property;" that the notice stated only that the Jackson facility is the "most likely" source of the contaminants; that the notice failed to provide Jackson with a description of the activity that constituted the violations; and that the notice does not identify the date of the alleged violations. [ECF No. 15, at 17].

I find that the notice contains sufficient factual specificity to put Jackson on notice that the natural gas well they formerly operated was potentially leaking or spilling certain chemical pollutants. The notice states the exact location of the pipeline facility including reference numbers for the line and well. Lovejoy compiled comprehensive list of the chemicals that the survey conducted on the Lovejoy property detected. [ECF No. 15, Ex. A.]. The notice states the date of the survey conducted and the legal and factual bases for Lovejoy's assertion that Jackson is in violation of RCRA. Accordingly, the motion to dismiss the RCRA claims under Rule 12(b)(1) is **DENIED**.

## 2. Jackson's motion to dismiss for failure to state a claim

RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste. *Courtland Co. v. Union Carbide.*,

2020 U.S. Dist. LEXIS 155019 (S.D. W. Va. Aug. 26, 2020). The primary purpose of RCRA is "to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, so as to minimize the present and future threat to human health and the environment." *Id.* (*quoting Meghrig v. KFC W., Inc.*, 516 U.S 479, 483 (1996)).

Subchapter III, or Subtitle C, of RCRA concerns the management of hazardous waste and directs the federal Environmental Protection Agency ("EPA") to promulgate federal standards and permit requirements for its storage, treatment, and disposal. *See* 42 U.S.C. §§ 6921-6934. RCRA defines "hazardous waste" as:

> [A] solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may -- (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C. § 6903(5); The EPA Administrator and the Secretary of the West Virginia Department of Environmental Protection are responsible for developing and promulgating criteria for identifying the characteristics of hazardous waste, and for listing such hazardous waste. *See* 42 U.S.C. § 6921(a); W. Va. Code § 22-18-6(a)(2).

Within this regulatory scheme are a set of twin citizen suit mechanisms. The first authorizes suit "against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter. . . ." 42 U.S.C. § 6972(a)(1)(A). The second provision permits citizen suits to be commenced "against any person, including the

United States and any other governmental instrumentality or agency . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or is contributing to the past or present handling, storage, treatment, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

### i. 42 U.S.C. § 6972(a)(1)(A) "permitting" violation claim (Count II)

Lovejoy alleges in Count II that Jackson has violated the statutory provisions and the hazardous waste permitting regulations promulgated by the EPA under RCRA Subtitle III (42 U.S.C. §§ 6921-6939) and by the state of West Virginia under its Hazardous Waste Management Act, *W. Va. Code* §22-18-1, et seq. Those statutes and regulations prohibit the treatment, storage, or disposal of hazardous wastes that are listed in EPA regulations without a hazardous waste permit authorizing such activities. 42 U.S.C. §6928, W.Va. Code § 22-18-8(a).

Jackson moves to dismiss Count II because "the statements in Count II essentially comprise a 'formulaic recitation of the elements of a cause of action' within the meaning of *Twombly*, rather than factual allegations." [ECF No. 15 at 9]. Jackson also argues that Lovejoy does not identify or make any effort to describe specific acts or omissions of Jackson that constitute the treatment, storage, or disposal of hazardous waste. *Id.* Jackson also directs the Court to the "Bentsen Amendment" to RCRA, which states that "drilling fluids, produced waters, and other wastes associated with the exploration, development, and production of crude oil or natural

gas or geothermal energy shall be subject only to existing State or Federal regulatory programs in lieu of Subtitle C." 42 U.S.C. § 6921(b)(2)(A).

However, Jackson's primary defense to Lovejoy's § 6972(a)(1)(A) claim is that it is no longer an owner or operator of the Jackson facility. Lovejoy now acknowledges this crucial point. [ECF No. 22 at 8] ("Lovejoy concedes that Jackson no longer owns or operates the Jackson facility and therefore has no liability for failing to have a current permit[.]))." Nevertheless, Lovejoy attempts to revive this claim by asserting that Jackson is in violation of its closure obligations under 40 C.F.R. Part 264—an allegation that does not appear in the Amended Complaint. Lovejoy cites *Goldfarb v. Mayor & City Council of Baltimore*, 791 F. 3d 500 (4th Cir. 2015) for the proposition that the failure to satisfy closing obligations can be an ongoing violation within the meaning of the permitting provision, § 6972(a)(1)(A). However, in *Goldfarb*, the defendant still owned the facility in question. In *Goldfarb*, the Fourth Circuit Court of Appeals vacated the dismissal of the plaintiff's complaint which, the Court held, adequately alleged that the Defendant was a present owner or operator who was responsible for an ongoing violation of "any permit, standard, regulation, condition, requirement, prohibition, or order." *Id.* at 513. That is not so here. Lovejoy admits that Jackson is only a past owner and has not pleaded facts to demonstrate a present, ongoing permitting type of violation.

I note, as the parties have thoroughly briefed the issue, that there is divided authority as to the question of whether past conduct can satisfy the "to be in violation" standard of the RCRA permitting section, 6972(a)(1)(A). The Supreme Court considered this question in the context of a Clean Water Act claim and concluded that

13

the citizen suit permitting violation of that law was meant to encompass only present day violations. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 57 (1987) ("the most natural reading of to be in violation is a requirement that citizen-plaintiffs allege a state of continuous or intermittent violations—that is, a reasonable likelihood that a past polluter will continue to pollute in the future."). Lovejoy is unable to point the Court to a decision from this circuit or, indeed, a single Court of Appeals decision from any circuit which has held that a *past owner* can be held liable for present permitting violations under § 6972(a)(1)(A). Such a result would seem to contradict *Gwaltney* and the natural reading of the statute. I find it hard to reckon with the basic logic of how a past owner or operator would be able to bring itself into regulatory compliance with regards to a site or facility that it no longer controls. Allowing this claim to proceed would also ignore the fact that with RCRA's other citizen suit provision, § 6972(a)(1)(B), Congress has provided a remedial cause of action against any "past or present owner or operator that contributed to the handling, storage, treatment, transportation or disposal of any solid or hazardous waste that may present an imminent and substantial endangerment to health or the environment."

Because Jackson is a past owner without liability under § 6972(a)(1)(A), I need not rule on Jackson's argument that as a natural gas producer, it is exempt from RCRA regulation after passage of the Bentsen Amendment. Finally, Jackson correctly points out that *Goldfarb* is unrelated to the closure obligations under Part 264 that Lovejoy now raises in an attempt to revitalize Count II. For the foregoing

reasons, the motion to dismiss as it pertains to Lovejoy's claims under the citizen suit provision provided for in 42 U.S.C. § 6972(a)(1)(A) is **GRANTED**.

ii. **Lovejoy's 42 U.S.C. § 6972(a)(1)(B) imminent and substantial endangerment claim (Count III)**

Jackson moves to dismiss Count III for failure to state sufficient facts to support an allegation of an imminent and substantial endangerment. "In contrast to claims brought under subsection (a)(1)(A), claims under subsection (a)(1)(B) may be brought regardless of whether the plaintiff can demonstrate that the defendant's actions violated a specific RCRA-based permit." *Goldfarb*, 791 F.3d at 505. The district may restrain any person who has "contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste." 42 U.S.C. § 6972(a)(1)(B). And, to remedy a violation of either subsection, the district court has authority "to order [a defendant] to take such other action as may be necessary." 42 U.S.C. § 6972(a). "Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste into air or water[,] such that solid waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

Jackson argues that Lovejoy has failed to demonstrate the potential for immediate and substantial harm. As with her CERCLA claim, I find that Lovejoy has pleaded this claim with the bare minimum level of adequate specificity to survive a Rule 12(b)(6) motion, even if the Amended Complaint falls short of scientific or mechanical certainty.

Lovejoy alleges first that Jackson is a person who has "contributed . . . to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste." [ECF No. 39 at ¶48]. Lovejoy identifies the substances that were revealed during the environmental investigation as "solid wastes" within the meaning of 42 U.S.C. § 6903(27) and "hazardous waste" within the meaning of 42 U.S.C. § 6903(5). Lovejoy complains that these contaminants have "been shown to cause or significantly contribute to an increase in mortality or an increase in serious irreversible . . . illness, and each poses a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." [ECF No. 39 at ¶47]. The statute clearly authorizes enforcement against past handlers who may have allowed hazardous substances to leak or spill out of their industrial property.

Again, I am wary of Lovejoy's pleading which has not specifically alleged that the compounds detected in her soil and groundwater are related to the natural gas industry. However, as in her CERCLA claim in Count I, I find that this claim is sufficiently plausible to develop in discovery. I reiterate that at the summary judgment stage, Lovejoy will need to present a more definitive link between her soil contamination and the Jackson facility. Accordingly, I **DENY** the motion to dismiss Count III.

### C. West Virginia State Law Claims

#### i.    Public nuisance (Count IV)

"A public nuisance is an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons." *Hark v. Mountain Fork Lumber Co.*,

34 S.E.2d 348, 354 (W. Va. 1945). A public nuisance tends to affect an indeterminate number of people among the general public, while a private nuisance injures only one or a limited, definite number of individuals. *Id.* "A public nuisance action usually seeks to have some harm which affects the public health and safety abated." *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901, 925 (W. Va. 1997). A private individual cannot maintain a suit to abate a public nuisance unless such individual suffers a "special injury" that differs "not only in degree, but in character" from the injury inflicted upon the general public. *See Hark*, 34 S.E.2d at 354; *Int'l Shoe Co. v. Heatwole*, 30 S.E.2d 537, 540 (W. Va. 1944); *Curry v. Boone Timber Co.*, 105 S.E. 263, 264 (W. Va. 1920). The injury must be "serious and permanent" and affect "the substance and value of their property." *Curry*, 105 S.E. at 264; *see also Hark*, 34 S.E.2d at 354 (requiring "substantial permanent damages [that] cannot be fully compensated in an action at law").

Lovejoy alleges that the presence of contaminants far exceeds any background level and that these contaminants threaten health and human safety, impede Lovejoy's ability to have the full use and enjoyment of her property, and threaten to contaminate a waterway, the Mud River. Such contamination could theoretically be harmful to the public, but Lovejoy has not made any non-speculative allegations that there is an ongoing threat to public health and safety. The Amended Complaint merely suggests that the Lovejoy property's adjacency to the Mud River is indicative of widespread contamination that could injure the public. This is insufficient as a matter of law to state a claim for abatement of a public nuisance. Accordingly, the Motion to Dismiss Count IV is **GRANTED**.

### ii. Private nuisance (Count V)

Jackson further submits that Lovejoy is unable to identify an act or omission that would render Jackson liable for the private nuisance claim she advances in Count V. "A private nuisance is a substantial and unreasonable interference with the private use and enjoyment of another's land." Syl. Pt. 1, *Hendricks v. Stalnaker*, 380 S.E.2d 198, 199 (W. Va. 1989). In order for an interference to be "substantial," the interference must "involv[e] more than slight inconvenience or petty annoyance[,] . . . [and] there must be a real and appreciable invasion of the plaintiff's interests." *Carter v. Monsanto Co.*, 575 S.E.2d 342, 347 (W. Va. 2002) (quoting Restatement (Second) of Torts § 821F(c) (1979)). An interference is "unreasonable" "when the gravity of the harm outweighs the social value of the activity alleged to cause the harm." Syl. Pt. 2, *Hendricks*, 380 S.E.2d at 199.

Lovejoy has plausibly alleged a private nuisance. Lovejoy claims that by some act or omission, Jackson has caused the release of toxic, noxious, harmful, and hazardous contaminants on her property. The contaminants, she pleads, are "not only an invasion" of the "right to the customary safe and comfortable use and enjoyment of her property" but also constitute "a condition that both presents and may present an imminent and substantial danger to human health and the environment." [ECF No. 39 at 2]. Taking the allegations as true, I find that the contaminants that are alleged to originate from the Jackson facility unreasonably and substantially interfere with the beneficial use and enjoyment of her land and water. The Motion to Dismiss as it pertains to Count V is also **DENIED**.

### iii. Negligence (Count VI)

Lovejoy pleads that Jackson, through its acts or omissions, breached its duties of reasonable care through its supposed failure to handle, treat, store, or properly dispose of contaminants emanating from the Jackson facility. Jackson's response to this claim is that Lovejoy has failed to adequately plead that Jackson ever handled, transported, or stored contaminants in the first place. Lovejoy instead relies on the previously discussed inference that the pipeline is the only plausible source of contamination.

To prevail on a claim of negligence in this state, a plaintiff must demonstrate, by a preponderance of the evidence, that (1) the defendant owes a duty to the plaintiff; (2) the defendant breached that duty by an act or omission; and (3) that the breach of the duty proximately caused the injuries that the plaintiff suffered. *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016). The determination of whether the defendant owes a duty is not a factual one; rather the determination of whether a plaintiff is owed a duty of care by the defendant must be rendered as a matter of law. Syl. Pt. 4, *Jack v. Fritts*, 457 S.E.2d 431, 431–32 (W. Va. 1995). Specifically,

> The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

*Sewell v. Gregory*, 371 S.E.2d 82 (1988). "The obligation to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct

19

unreasonable." *Id.* (quoting 2 F. Harper & F. James, The Law of Torts § 18.2 (1956) (footnote omitted)).

Lovejoy has pled that Jackson owed her a duty of reasonable care to "handle, treat, store, and dispose" of the hazardous substances "in a manner which would not cause or result in the release" of those substances into the soil and groundwater on her property and the surrounding environment. [ECF No. 3 at 25–26]. Taking the facts in the Amended Complaint as true, I find that Jackson—as past owner of the natural gas pipeline that transverses the land in question—did owe Lovejoy a duty of care. It is reasonably foreseeable that hazardous chemicals moving in a pipeline will, if not properly stored or managed, leak, spill, seep, or otherwise emit from the pipeline and create an endangerment to the property on which the pipeline sits and to the owner of that property.

Jackson reiterates that Lovejoy has not yet been able to name the act or omission that proximately caused the harm described in the Amended Complaint. I find, however, that it is sufficient for the purposes of a motion to dismiss that Lovejoy has described Jackson as the suspect pipeline's prior owner (a fact which is undisputed) and that some failure on Jackson's part is the reason for the damage she has sustained to the property. Imposing a duty of care on Jackson for the time it owned and operated the pipeline is consistent with public policy and federal and state environmental regulatory law. The arguments about the exact nature of Jackson's acts or omissions are best left to be sorted out at the summary judgment stage or at trial. The Motion to Dismiss Count VI is therefore **DENIED**.

### iv.   Strict Liability (Count VII)

Jackson argues that the transportation of natural gas is not a strict liability activity in West Virginia as a matter of law. *See Foster v. City of Keyser*, 501 S.E. 2d 165 (W. Va. 1997). In her response to the Motion to Dismiss [ECF No. 22], Lovejoy concurs with this proposition of law but nevertheless retained the strict liability claim in a later filed Amended Complaint [ECF No. 39]. I agree with the parties that the transportation of natural gas is not an abnormally dangerous activity under West Virginia law and order that Count VII be **DISMISSED**.

## IV.   CONCLUSION

For the reasons stated in the foregoing opinion, the Motion to Strike Exhibit A [ECF No. 23] is **GRANTED**. The Motion to Dismiss [ECF No. 14] is **GRANTED** only as it pertains to Counts II, IV, and VII and **DENIED** as it pertains to Counts I, III, V, and VI.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      July 15, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE